Vladimir TUNIN et al., Plaintiffs,

v.

Benjamin WARD et al., Defendants.

No. 76 CIV. 482.

United States District Court,
S. D. New York.

Dec. 8, 1977.

David Rudenstine, Project on Sentencing and Parole, New York Civil Liberties Union, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of the State of New York by Ralph McMurry, Rhonda Amkraut Bayer, Asst. Attys. Gen., New York City, for defendants.

*Memorandum Opinion*

MOTLEY, District Judge.

Plaintiffs have brought this suit under 42 U.S.C. § 1983 to challenge New York State's procedures for temporary release of prisoners. The three named plaintiffs are inmates at Green Haven Correctional Facility in New York State who are eligible for temporary release from prison but whose applications for furloughs have been denied. Plaintiffs seek to represent the class of all inmates in New York State prisons who are eligible for temporary release and a subclass of all prisoners who, it is alleged, when considered for temporary release, have been

or will be discriminated against by the defendants because of race, ethnic and class prejudices. Defendants are the Commissioner of Correctional Services of New York State and seven other state officials who have control over the temporary release programs.

Plaintiffs claim that the current standards used by New York State for temporary release violate their right to due process and equal protection. Plaintiffs also allege that the state has unconstitutionally delegated its power to make standards to an administrative board.

Plaintiffs specifically challenge 26 N.Y.S. Corr. Law § 853 and the rules promulgated under it contained in Administrative Bulletin # 63. Administrative Bulletin # 63 set out certain categories of prisoners who will be denied temporary release.

Plaintiffs argue that the standards are a) incapable of non-arbitrary application; b) vague and overbroad; and c) applied arbitrarily by the defendants. Plaintiffs claim that the standards are unconstitutional on their face and as applied.

Plaintiffs have requested prospective injunctive relief. Plaintiffs do not ask that defendants grant plaintiffs' earlier applications for temporary release.[1]

Plaintiffs have moved for a class action determination and for an order to convene a three-judge court. Defendants oppose both motions and have moved for judgment on the pleadings or for a change of venue to the Northern District of New York.

The court finds that venue in the Southern District of New York is proper; that the action is properly maintained under 42 U.S.C. § 1983 rather than as a writ of habeas corpus; that plaintiffs have standing to sue; and that there is a live case or controversy. The court denies defendants' motion to dismiss the complaint and finds that the case should be heard by a three-judge court. The question of abstention is left to the three-judge court. A class action will be certified.

## I. VENUE

Defendants have moved for a change of venue to the Northern District of New York, 28 U.S.C. § 1404(a). They argue that all of the prisoners' central files are kept in Albany and that only two of the seven defendants reside in the Northern District of New York. However, all the plaintiffs reside in the Southern District of New York at the Green Haven Correctional Facility. Four of the seven defendants are also residents of the Southern District.

Defendants argue that a challenge to statewide regulations which were promulgated in Albany should be brought in Albany. However, it is clear that a prisoner may bring a suit in the district in which he is incarcerated to challenge in a class action statewide prison regulations. *Haymes v. Regan*, 525 F.2d 540 (2d Cir. 1975). Defendants have not met their heavy burden of proving that the Southern District is an inconvenient forum. Absent such a showing, the plaintiff's choice of forum will not be disturbed. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1946). *See also Lykes Bros. Steamship Co. v. Sugarman*, 272 F.2d 679, 681 (2d Cir. 1959); *Incontrade, Inc. v. Oilborn International, S. A.*, 407 F.Supp. 1359 (S.D.N.Y.1976). Therefore the defendants' motion for a transfer to the Northern District of New York is denied.

## II. JURISDICTION UNDER § 1983

Defendants argue that plaintiffs have improperly brought this action as a civil rights action under 42 U.S.C. § 1983 and that plaintiffs must instead bring their challenge in the form of a writ of habeas corpus with the attendant requirement that plaintiffs exhaust their state remedies. Defendants base their argument on *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), in which prisoner plaintiffs brought an action under 42 U.S.C. § 1983 challenging the constitutionality of disciplinary action by the New York State Department of Correctional Services which resulted in a loss of the prisoners' good

---

1. Plaintiffs may have shaped their request for relief to avoid jurisdictional defects. See the discussion under Section II, Jurisdiction under § 1983.

conduct time credits ("good time"). If successful, plaintiffs' challenge would have resulted in restoration of good time and speedier release. The Supreme Court ruled that since the plaintiffs were "seeking immediate or a speedier release from . . confinement—the heart of habeas corpus. . . .", *Id.* at 498, 93 S.Ct. at 1840, they must bring a writ of habeas corpus and not proceed under § 1983.

However the Court also said, "a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody . . .", *id.* at 499, 93 S.Ct. at 1841.

In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court made it clear that a suit could be brought under § 1983 which attacked "the conditions of confinement rather than the fact or length of custody", *Id.* at 554, 94 S.Ct. at 2973 (citation omitted). The Court held that prisoners could raise the constitutionality of procedures for depriving prisoners of good time credits in a § 1983 suit. In light of *Wolff*, defendants' argument that *Preiser, supra,* precludes an action under § 1983 to challenge the prospective application of prison regulations dealing with temporary release must fall on two grounds.

First, plaintiffs do not challenge the *fact* of their confinement but rather challenge a *condition* of their confinement. The temporary release program is not a step towards termination of confinement. A prisoner's behavior while on temporary release, to attend the funeral of a relative for example, may be a factor considered by the parole board in evaluating a prisoner's readiness for parole. However, a temporary release, unlike the good time credits at issue in *Preiser, supra,* is not a means of securing immediate or speedier release. For this reason *Preiser* does not require that plaintiffs' suit be brought as a writ of habeas corpus.

*Preiser* does not preclude plaintiffs' action under § 1983 for a second reason. The Supreme Court made clear in *Preiser* and *Wolff, supra,* that a court may hear suit brought under § 1983 to determine the va-

lidity of prison procedures and may fashion an appropriate remedy as long as the remedy is not the immediate release of a prisoner or the reduction of time to be served.

In *Wolff*, the Supreme Court said:

Only an injunction restoring good time improperly taken is foreclosed . . . .. [*Preiser* would not] preclude a litigant with standing from obtaining by way of ancillary relief an otherwise proper injunction enjoining the prospective enforcement of invalid prison regulations. *Id.* at 555, 94 S.Ct. at 2974.

Plaintiffs have explicitly pointed out that they do not seek temporary release for themselves. They do not even seek new hearings on their applications for temporary release which were denied. Plaintiffs seek instead to enjoin "*prospective* enforcement of invalid prison regulations", *Wolff, supra.*

In two recent cases, the Second Circuit has considered the relationship of *Preiser* and *Wolff*. In *United States ex rel. Johnson v. Chairman of New York State Board of Parole,* 500 F.2d 925, *vacated and remanded sub nom Regan v. Johnson,* 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974), the court upheld the treatment of a prisoner's habeas corpus petition as an action under § 1983 when the prisoner "did not seek actual release from custody but merely a statement of reasons for the denial of his parole . . .." *Id.* at 926.

In *Haymes v. Regan,* 394 F.Supp. 711 (S.D.N.Y.), *aff'd as modified,* 525 F.2d 540 (2d Cir. 1975), Judge Knapp approved a prisoner's suit under § 1983 which challenged the New York State Parole Board procedures and said:

Defendants contend that . . . plaintiff's goal still is a more speedy release, by virtue of the fact that a rehearing "might" so result . . . [A] new release hearing . . . provides no guarantee of release, particularly in light of the discretionary nature of parole . . The touchstone of habeas relief would, therefore, appear to be immediacy or certainty of release . . . Since the relief requested by plaintiff cannot result

in the definite speed-up of his release and since parole procedures constitute a condition of prison life, the Court's jurisdiction properly arises under 28 U.S.C. § 1343(4) as implemented by 42 U.S.C. § 1983, rather than 28 U.S.C. § 2254 . .. *Id.* at 713–14, (Citations and footnotes omitted).

In affirming that part of Judge Knapp's opinion, the Second Circuit said:

Since it is the manner of parole decision-making, not its outcome, that is challenged, appellant does not present a complaint of the sort in *Preiser v. Rodriguez* . . . for which habeas corpus would be appropriate. *Id.* at 542 (citation omitted).

Other circuits are in accord with this reasoning. *See Leonard v. Mississippi State Probation and Parole Board*, 509 F.2d 820, 823–4 (5th Cir. 1975) (class action under § 1983 to challenge the use of disciplinary records in parole hearings was properly brought); *Bradford v. Weinstein*, 519 F.2d 728, 733–5 (4th Cir. 1974), *vacated and remanded sub nom. Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (suit properly brought under § 1983 to challenge parole procedures when there was no claim made the plaintiffs were entitled to immediate or even early release).

Defendants have cited many cases to support their argument that *Preiser, supra,* does preclude plaintiffs' suit under § 1983. The arguments made by the defendants have recently been rejected by Judge Lasker of this District. This court finds the reasoning of Judge Lasker to be persuasive.

In *Cicero v. Olgiati*, 410 F.Supp. 1080 (S.D.N.Y.1976), Judge Lasker held that an action under § 1983 was a proper method of challenging the validity of the New York State Parole Statute and the methods used by the New York Board of Parole. Judge Lasker said:

Although plaintiffs admittedly seek a close examination of the criteria and methods used in making parole release determinations, they do not claim that they or any member of the class they wish to represent are entitled to immedi-

ate release or that they have a right to parole at all. Moreover they seek neither an earlier nor a speedier hearing at which they will be considered for parole. In short, plaintiffs do not seek release from state custody and their claims do not fall under the habeas corpus statute. *Id.* at 1086.

The decisions cited by defendants are distinguishable in that they deal with requests for immediate relief or a new hearing to determine parole eligibility. *See United States ex rel. Dereczynski v. Longo*, 506 F.2d 1403 (7th Cir. 1974); *Mason v. Askew*, 484 F.2d 642 (5th Cir. 1973); *Gardner v. McCarthy*, 503 F.2d 733 (9th Cir. 1974). Therefore, the court finds that it has jurisdiction to hear this suit under 42 U.S.C. § 1983.

## III. STANDING; CASE OR CONTROVERSY

█ Plaintiffs clearly have standing to bring this suit. Plaintiffs, whose applications for furloughs were denied, claim that they have been injured by defendants' procedures for granting temporary release and are likely to be injured again by these procedures. Plaintiffs continue to be subject to defendants' control. There is a live controversy. *See Wolff, supra; United States ex rel. Johnson, supra; Haymes, supra; Cardaropoli v. Norton*, 523 F.2d 990 (2d Cir. 1975).

## IV. THREE–JUDGE COURT PURSUANT TO 28 U.S.C. § 2281

█ Plaintiffs have moved for the convening of a three-judge court pursuant to 28 U.S.C. § 2281. This action was filed on January 30, 1976. The legislature's repeal of 28 U.S.C. § 2281 is not applicable to any action commenced on or before August 12, 1976. Therefore the instant action must be decided under 28 U.S.C. § 2281.

Former § 28 U.S.C. § 2281 read as follows:

An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by re-

straining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefore is heard and determined by a district court of three judges under section 2284 of this title.

■ Plaintiffs have moved for injunctive relief against State officials on constitutional grounds. The statute plaintiffs attack, 26 Corr.Law 853(4), and the administrative regulation under that statute, Adm. Bulletin # 63, were promulgated by the legislature and the New York State Department of Corrections respectively and apply to all state prisons. Plaintiffs' motion for a three-judge court would therefore be granted, *Nieves v. Oswald*, 477 F.2d 1109, 1114 (2d Cir. 1973), unless their claims were insubstantial, *Goosby v. Osser*, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973). Defendants urge this court to dismiss the claims as frivolous without convening a three-judge court. Without in any way passing on the substantiality of other constitutional issues raised by plaintiffs, the court finds certain of the constitutional issues to be not frivolous.

In *Goosby v. Osser, supra,* the Supreme Court set out the standard by which the determination of insubstantiality must be made.

> Claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281. *Id.* at 518, 93 S.Ct. at 859.

Defendants argue that plaintiffs' due process claims are frivolous. Defendants first claim that plaintiffs do not have a constitutionally protected interest in the temporary release programs and therefore due process does not attach.

■ The court finds that plaintiffs have a liberty interest in the temporary release program which is entitled to due process protection. The Supreme Court in *Morrisey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), reviewing the parole revocation process challenged in that case said:

> . . . the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a "right" or a "privilege". By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal. *Supra*, at 482, 92 S.Ct. at 2601.

In construing *Morrissey, supra,* the Second Circuit recently said:

> Parole was thenceforth to be treated as a 'conditional liberty' representing an 'interest' entitled to due process protection. A prisoner's interest in prospective parole, or 'conditional entitlement' must be treated in like fashion. To hold otherwise would be to create a distinction too gossamer-thin to stand close analysis. Whether the immediate issue be release or revocation, the stakes are the same: conditional freedom versus incarceration. *United States ex rel. Johnson, supra,* at 928.

*See also Haymes v. Regan,* 525 F.2d 540, 543 (2d Cir. 1975).

Furthermore, the Second Circuit has held that prisoners have a liberty interest in "social furloughs, work release, transfer to Community Treatment Centers . . . .", *Cardaropoli, supra,* at 994. Plaintiffs thus have a liberty interest in the temporary release programs.

Defendants next argue that, even if plaintiffs have a liberty interest in the program, their claim of a due process violation is meritless. In light of *Cardaropoli, supra,* in which the Second Circuit ruled that the

Federal Bureau of Prisons must give a prisoner notice of its intention to designate him a "Special Offender", the evidence and reasons for such designation, and a personal interview with an impartial decision maker in which the prisoner could present evidence, the plaintiffs' claim that due process requires the same safeguards in the temporary release programs is not a frivolous claim. *See also, United States ex rel. Johnson, supra; Wolff, supra.*

Plaintiffs' second claim that the challenged statute is void for vagueness is not frivolous. Correction Law § 853(4) states:

> If the temporary release committee determines that a temporary release program for the applicant is consistent with the safety of the community, is in the best interests of rehabilitation of the applicant, and is consistent with the rules and regulations of the department, the committee . . . shall develop a suitable program of temporary release for the applicant.

Administrative Bulletin # 63 promulgated under this statute sets out some categories of inmates who will be denied temporary release. These categories include: 1) "those associated with organized crime"; 2) "the notorious"; 3) "those convicted of violent crimes against a person"; 4) "those considered to be escape risks"; 5) "absconders from bail and parole supervision"; 6) "those with detainers, holds or warrants"; 7) "those with very long sentences"; 8) "those with additional sentences to follow"; 9) "those known to have made threats against persons outside the institution"; 10) "those who display undue emotional upset".

In considering whether this language could be held to be void for vagueness, the court finds the reasoning of Judge Lasker in *Cicero v. Olgiati*, 410 F.Supp. 1080 (S.D. N.Y.1976), persuasive. In that case, Judge Lasker denied New York State's motion to dismiss a prisoners' challenge to New York's parole release procedures. He said:

> Finally, the phrase "not incompatible with the welfare of society", while composed of non-technical words, is equally amorphous. The statute contains no ob-

jective standard as to what constitutes the welfare of society or what conduct is incompatible with that welfare. *Id.* at 1094, (footnote omitted).

*See also, United States ex rel. Johnson, supra,* at 931. Plaintiffs' claim is not frivolous under the *Goosby* test. *See also, Grayned v. City of Rockford*, 408 U.S. 104, at 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

Plaintiffs claim that the defendants' conduct and policies violates their right to equal protection. They claim that the temporary release program standards are so vague as to be incapable of non-arbitrary application and that, in the alternative, the standards are applied arbitrarily. Plaintiffs allege that the defendants approve or disapprove applicants for temporary release on the basis of race, ethnic and class distinctions.

Defendants argue that plaintiffs' claim should be dismissed because plaintiffs have not set forth sufficient factual allegations to support their claim.

The court finds that plaintiffs, if able to prove their allegations, will have stated a cause of action. They are not required to plead their claim with any more specificity at this time. *Holmes v. New York City Housing Authority*, 398 F.2d 262, at 265 (2d Cir. 1968).

In summary, plaintiffs have raised non-frivolous claims which require the convening of a three-judge court. The court need not reach the claim that there was an unconstitutional delegation of power.

## V. ABSTENTION

■ The question of abstention is for the three-judge court to decide. *New York State Waterways Association, Inc. v. Diamond*, 469 F.2d 419, 423 (2d Cir. 1972).

## VI. CLASS ACTION CERTIFICATION

■ Plaintiffs satisfy the prerequisites of the maintenance of a class action under Fed.R.Civ.P. 23(a). The members of the class are estimated to number 5,000, being all the prisoners who are eligible for temporary release. The subclass of prisoners is

estimated to number about 2,000. There are questions of law and fact common to the class. The complaint alleges that all prisoners are denied due process and that the subclass is denied the right to equal protection. Even though, as defendants argue, the factual questions may vary slightly the class may be maintained. *Escalera v. New York City Housing Authority*, 425 F.2d 853 (2d Cir.), *cert. denied*, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970).

█ The claims of the representative parties are typical of the class. They seek to represent all prisoners eligible for temporary release. It is irrelevant that some members of the class may have been granted temporary release and might not wish to contest the temporary release procedures. *Norwalk C.O.R.E. v. Norwalk Redevelopment Agency*, 395 F.2d 920, 927 (2d Cir. 1968). The representative parties will fairly and adequately represent the interests of the class. Plaintiffs are represented by the New York Civil Liberties Union Project on Sentencing and Parole. Defendants' claim that the interests of the class and the subclass are antagonistic is incorrect. The two classes are not vying with each other for temporary release. The representative parties should be able to represent both classes.

█ The court rejects the defendants' argument that there is no need for a class action since plaintiffs seek injunctive relief. As Judge Lasker said in *Cicero, supra,* a class action will avoid the problem of mootness. Defendants also argue in their memorandum of law that a class action will violate the confidentiality of prisoners' records. The court finds that defendants have not made a convincing showing that this will be a necessary consequence of a class action in this case. Discovery can be shaped to avoid this problem.

█ Defendants have argued that this court should not certify this action as a class action but rather leave that decision to the three-judge court. While the law in this area is not settled, this court finds persuasive the reasoning of the Third Circuit in a recent case, *Ortiz v. Englebrecht,*

474 F.2d 977, 978 (1973). In that case, the Third Circuit remanded a case to the district court to determine whether the case should be certified as a class action and whether the case was moot. In light of the fact that the instant case has been pending for some time, there is a possibility that the plaintiffs will be released from prison prior to any decision by a three-judge court thereby making the case moot. This would be a waste of the judicial resources which have already been expended.

█ Therefore, the court certifies this action as a class action having two classes, all prisoners in New York State prisons who are eligible for temporary release under Corr.Law § 853, and a subclass of those prisoners who are non-white.

## VII. SUMMARY

In summary, this case requires that a three-judge court be convened to hear plaintiffs' claims which this court has found to be not frivolous. The action is certified as a class action.